[No. 410.   January Term, 1891.]

## MIGUEL SALAZAR, PLAINTIFF IN ERROR, v. ROBERT H. LONGWILL, DEFENDANT IN ERROR.

EJECTMENT—ANCIENT DOCUMENTS—EVIDENCE.—In an action of ejectment for the recovery of certain land, and for damages for its detention, where two ancient documents purporting to be conveyances of the land in controversy, but not executed according to the law of Spain, then in force in New Mexico as a province of Spain, and admitted by plaintiff not to be deeds conveying fee simple title, were offered in evidence by plaintiff as the foundation of his title, they were inadmissible to show color of title in the plaintiff, who claimed under the person mentioned as the grantee in said documents, in the absence of evidence that such person ever had or claimed possession of the land, or that his son entered or took possession as a tenant in common with the other heirs. So far as the evidence goes, his possession was adverse to them, and his entry was an ouster of them, for his assumption of ownership was in himself; and if any title inured to any person by virtue of his possession, it would be to him, his heirs, or persons holding under him, and not to the heirs of the person mentioned as grantee in said documents.

ID.—QUITCLAIM DEED—EVIDENCE.—A quitclaim deed offered in evidence in such case, purporting to convey no other title to the land in question than that derived through the pretended conveyances mentioned supra, was also inadmissible in evidence and properly excluded.

ID.—EXCLUSION OF EVIDENCE IMMATERIAL.—The plaintiff having failed to show any title in the person mentioned as grantee in the pretended conveyances, the exclusion of evidence as to who were the heirs of such person, if error, is immaterial, and can have no effect here.

ID.—EVIDENCE—VERDICT.—The papers offered in evidence being excluded, there was no evidence to support a verdict, and the court properly directed the jury to find for defendant.

ERROR, from a judgment for defendant, to the First Judicial District Court, Santa Fe County. Judgment affirmed.

The facts are stated in the opinion of the court.

EDWARD L. BARTLETT for plaintiff in error.

Where the documents are not, perhaps, technically deeds to real estate, they were competent evidence to go to the jury, as showing the color of title under which Tomas Sena claimed in regard to the possession of the land. 1 Greenl. Ev., secs. 21, 141, 142; Abb. Tr. Ev., p. 708.

If they had not been competent when first offered, they ought at this time to have been admitted, after the testimony of Timoteo Sena and Joseph D. Sena in regard to the possession of the land. Tyler on Eject., p. 483; Stoddard v. Chambers, 2 How. (U. S.) 316.

The declarations of members of a family, and the general reputation in the family, and even tradition, and the statements of others not members, but intimate with the family, are accepted as evidence of pedigree. Tyler on Eject., p. 491; Jackson v. Cooley, 8 Johns. Rep. 128.

It is immaterial whether Jose D. Sena had the right to put a tenant upon the land for the heirs of Miguel Sena y Quintana, so long as the tenant Trancosa went

upon it as such tenant in 1876 or 1877. Even if he did not enter as tenant of Sena y Quintana, his possession could not be adverse without color of title from some other source. Tyler on Eject., pp. 91, 108; Jackson v. Thomas, 16 Johns. 293, 301; Jackson v. Newton, 18 Johns. 355; Joy v. Stump, 12 Pac. Rep. 929.

A prior possession is sufficient to entitle a party to recover against a mere intruder, or wrongdoer, or person subsequently entering without lawful right; and where no legal title is shown the party showing prior possession will be held to have the better right. Tyler on Eject., p. 72, and cases cited; Hubbard v. Barry, 21 Cal. 321; Hutchinson v. Perley, 4 Id. 33; Shultz v. Arnot, 33 Mo. 172; Wilson v. Palmer, 18 Tex. 592; Shumway v. Phillips, 22 Pa. St. 151; Tappscott v. Cobbs, 11 Gratt. 172–180; Jones v. Nunn, 12 Ga. 469; Smith v. Leorillard, 10 Johns. 339–354.

CATRON, KNAEBEL & CLANCY for defendant in error.

The first document is not signed by Vicente Martin, personally, nor by him as agent, nor by Maria Casadas in person, or by her agent. There is no evidence in it that he was her agent, nor if he was such agent that he had authority to convey the land of her deceased husband.

The second, which purports on its face to be a conveyance of Vicente Apodaca and Vicente Martin to Tomas de Sena, is not signed by either of them, nor by any one for them.

Under the Spanish law a sale of real estate must be made before a notary public in public writing "en escritura publica." Escriche, pp. 1529, 1530.

As to definition of "escritura publica," or public writing, see Id., p. 637.

As to how the public writing or instrument shall be made and authenticated, see Law 1, title 23, book 10, Novissima Recopilacion; Escriche, pp. 886, 888.

As to character of the "procuracion" or power of attorney required under the Spanish law, see Escriche, p. 1197; Id., p. 1353.

The pretended deed of the heirs of Tomas Sena, as the record shows, was made while defendant was in possession, claiming adversely. It is, therefore, champertous.

LEE, J.—This is an action of ejectment, brought by Miguel Salazar, the plaintiff in error, against the defendant in error, Robert H. Longwill, to recover possession of certain real estate situated in precinct number 4 in the county of Santa Fe, known as the "Ranchito Largo," and for damages for the detention of the same. The action being under the statute, the defendant's plea of not guilty put in issue the right of the plaintiff to possession, and all other questions raised, and matters charged in the plaintiff's declaration. The issues being thus joined, they proceeded to trial. The plaintiff introduced his evidence, whereupon the defendant's counsel moved the court to instruct the jury to return a verdict for the defendant, which motion was sustained for the reason that the evidence failed to suit the case, and the jury, by direction of the court, returned a verdict for the defendant. The plaintiff moved for a new trial, which was overruled, and by a writ of error brings the case to this court, and assigns the following grounds of error: (1) That the court erred in excluding from the jury the first document offered in evidence by the plaintiff below; it purporting to be a certificate of conveyance from Maria Casadas, widow of Vicente Apodaca, to Tomas Sena, of a portion of the lands in dispute, and executed on the thirtieth day of July, A. D. 1821. (2) That the court erred in excluding from the jury the second document offered in evidence by the plaintiff below; it purporting to be a conveyance from Vicente Apodaca and Vicente Martin to Tomas

Sena, of a portion of the lands in dispute, and purporting to have been executed by an alcalde on the twelfth day of September, 1807. (3) That the court erred, because at a later stage of the trial, and after evidence had been given tending to show possession of the lands in dispute in the ancestors of plaintiff in error's grantors, the court again refused to allow plaintiff in error to give the above described documents in evidence to the jury, but excluded the same again from the jury. (4) That the court erred in refusing to allow any testimony as to who were the heirs of Tomas Sena, except from absolute personal knowledge, and excluded from the jury testimony as to the general reputation in the family of the descendants of Tomas Sena as to who were his heirs, and refused to allow plaintiff in error to show that certain persons were recognized and treated in the family as such heirs, and excluded such testimony from the jury. (5) That the court erred in refusing to allow testimony to be given to the jury as to the actual occupancy of the land in dispute by permission of Jose D. Sena, after the death of Miguel Sena y Quintana in 1875, and in excluding such testimony from the jury. (6) That the court erred in excluding from the jury the deed offered in evidence, executed July 4, 1887, and recorded July 15, 1887, from persons reciting in said deed that they were the heirs of Tomas Sena to the plaintiff in error, conveying the land in controversy. (7) That the court erred in excluding from the jury other relevant, material, and competent testimony offered by plaintiff in error on the trial in the court below in support of his case, and which should have been allowed in evidence. (8) That the court erred in giving its instructions to the jury to return a verdict for the defendant below over the objections of the plaintiff in error, and in refusing to allow the jury to consider the evidence which it had before it.

The principal question for review arises upon the exclusion of certain documents offered in evidence by the plaintiff as the foundation of, or in support of, his title. We will consider this ruling more fully than any of the other points made, for we think it is decisive of the case. The documents were ancient documents, and therefore to be considered with the presumptions that come to the support of imperfect instruments of more than thirty years old. The documents thus offered in evidence in this case were evidently attempts to make conveyances under the laws of Spain, in force here at the time. The first one offered was dated in the year 1821, and executed by Don Diego Montoya, a constitutional alcalde. The grantors did not sign the same, for the reason, as the alcalde certifies, that they did not know how. The other document was dated in the year 1807, before Don Jose Miguel Tafoya, acting alcalde for the town of Santa Fe. The party making the deed was not present, but, as recited in the document, was at home, sick in bed; and the instrument was not signed by the grantor, or by anyone for her. Nor was there any authority in writing or power of attorney exhibited or offered in evidence, whereby the alcalde was authorized to execute the document. They were in the Spanish language, and, when translated into the English language, read as follows:

*EJECTMENT: ancient documents: evidence.*

"Document No. 8. At the city of Santa Fe, New Mexico, on the thirtieth day of the month of July, and current year of one thousand, eight hundred and twenty-one, before me, Don Diego Montoya, constitutional alcalde of said city, personally appeared Vicente Martin and Don Tomas Sena, both residents of this city, and the former stated that whereas his aunt, Maria Casadas, is sick in bed, and it is impossible for her to come to witness the execution of the present instrument, she has requested him, in the presence of

two witnesses, of this same place, to state in her name
that her husband, Don Vicente Apodaca, deceased,
sold to the said Don Tomas Sena, in the month of
April of last year, 1820, a piece of land known as the
'Ranchito Largo,' which is situate in this city, and it
consists of one hundred and seventy-seven and a half
varas from north to south, and from east to west on
the north side of eighty-one and a half varas, and on
the south of sixty-three and a half varas; the bounda-
ries of the said land being, on the north, the main road
that turns off from the Tenorio's house, which goes by
the Martinez house; on the south, the arroyo called
'Los Garambullos,' on the east, lands of the said pur-
chaser; and on the west, lands of Senor Mateo Garcia,
—for which land no instrument has been executed to
him; and in consideration of the fact that she knows
that the said bargain was made, and that in virtue
thereof she has received, to her perfect satisfaction and
contentment, twenty-one dollars and three reales in
cash, desiring to remedy the said defect in the name of
her deceased husband, and, on account of her present
inability, delegating for that purpose her authority to
her said nephew, Vicente Martin, it is her will that it
be stated that the bargain made of said land, being
true and legal as it is, it is also true that she was con-
tented and satisfied with the said sum, and in virtue
thereof, if the said land is or may be worth more, of
the excess she makes to him a gift and donation, pure,
simple, perfect, and irrevocable, which the law calls
'inter vivos,' and that she gives it to him free of any
annuity, rent, mortgage, or other incumbrance, in
order that he may freely use it in the manner that he
may choose, without anyone interfering with him,
neither she, her children, heirs, nor successors; and in
case anyone should oppose it, she requests the justice of
his majesty that they be not heard either in or out of
court, binding her children, on the contrary, to this

guaranty until they place him in quiet and peaceable possession, concerning which she renounces any and all laws which may operate in her favor, submitting herself to the fulfillment of this instrument as if it were by definite sentence pronounced by a competent judge, acquiesced in and not appealed from; and, as she knows it is an act of justice, she desires this to be complied with, and that it be considered as the said sale, without alleging the defect that up to this date the proper instrument had not been executed; to that end, and in order that the present may have the necessary force and validity, requesting the present constitutional alcalde to sanction it by his authority and judicial decree; and I, the said constitutional alcalde, stated that I sanctioned and did sanction it in so far as I am authorized by law. I certify that Maria Casadas is dangerously ill, and that for that reason, with full knowledge, it has been her will that her nephew, Vicente Martin, should appear her name, who, comparing all that he has stated, and which is here set forth, with that which in the presence of the two witnesses recently and for the sake of due formality the said Casadas has finally stated, it has all been found to be certain and true. In testimony whereof, and in order that the present instrument be entitled to the same credit as if it had been executed by order of the deceased Don Vicente Apodaca, I signed it with the same witnesses, who made a cross, not knowing how to write. The secretary of the municipality of this city signing this document of security, it being noted that use has been made of the present common paper on account of there being none of any stamp in this province. To all of which I certify.

"DIEGO MONTOYA.    [Scroll.]

"Witness: VICENTE X GARCIA.

"Witness: JOSE MIGUEL TENORIO.

"Before me, FRANCISCO PEREZ SERRANO [Scroll.],
"Secretary of the Municipality."

"Document No. 3. At the town of Santa Fe, on the twelfth day of the month of September, one thousand, eight hundred and seven, before me, Don Jose Miguel Tafoya, acting alcalde of this said town, appeared Vicente Apodaca, Vicente Martin, and Tomas de Sena, all three residents of this aforesaid town, whom I certify I know, and the two Vicentes stated that they gave, and in effect they did give, to the said Tomas de Sena, in legal sale, a piece of cultivated land which is at the Ranchito Largo, and [of] this land that which Vicente Apodaca sold consists of fifty varas, and that which Vicente Martin sold consists of one hundred and thirty-eight varas, both pieces comprising one tract; and its boundaries are, on the north, an arroyo; on the south, the Arroyo de los Garambullos; on the east, the lands of the said Vicente Martin; and on the west, the land of the said Vicente Apodaca,—which lands both vendors sold to him for the price and sum of one hundred and thirty-eight dollars in the currency of the country, which said vendors acknowledge having received from the hand of Tomas de Sena, to their satisfaction and contentment, with which they declare that they are satisfied, and paid for the value of said land; and, if it is or may be worth more, of the excess and greater value they make to him a gift and donation, pure, simple, perfect, and irrevocable, which the law calls [two words are here erased in the original; they were doubtless the words "inter vivos"]; and that they cede and convey to the said purchaser the right of action and seignority which they had in said land, in order that as his own he may use it, selling or alienating it, without any suit or claim being brought against him either by them, their children, heirs, successors, either now or at any time; and, in case they should bring it, may they not be heard either in or out of court; and that they will appear in his defense until they leave him in quiet and peaceable possession; to which

guaranty they bind their present and future property, real and personal, that they annul [waive] any and all laws that may operate in their favor, and they will not avail themselves thereof, either now or at any time; and they both submit themselves to the royal justices of his majesty, and particularly to those of this town, in order that to the fullest extent they may urge and compel them to the fulfillment of this instrument as if it were by the definitive sentence pronounced by a competent judge, acquiesced in, and not appealed from. All of which they executed before me, and they requested me, for the greater force and validity of this instrument, to sanction it by my authority and judicial decree; and I, said alcalde, state that I did and do sanction it in so far as I am authorized by law. I certify that I know the grantors, who did not sign, as they did not know how. I signed it with those attending me acting by special authority for lack of a public or royal notary, of which there is none of any kind in this province. To all of which I certify.

          "JOSE MIGUEL TAFOYA.   [Scroll.]
     "Attending: ANTONIO TAFOYA.   [Scroll.]
     "Attending: FRANCISCO BACA.   [Scroll.]"

     These instruments were attempted to be executed under the laws of Spain, then in force in this territory as a province of Mexico, and under the Spanish law a sale of real estate was made before a notary public by what was termed a "public writing" (en escritura publica). A "public writing" is thus defined: "'Public writing,' is that which is made by a notary public in the presence of the parties who execute it, with the assistance of two witnesses; the parties in interest signing it, or, at their request, either of the witnesses, with the said notary." Escriche, p. 637. "Public Instrument. In general, it is every writing authorized by a public functionary in matters pertaining to his office or position, as has been already indicated in the two preceding

articles, but more particularly by public instrument or writing, is meant the writing in which is contained a disposition or agreement executed before a notary public in accordance with the law, is understood, and of this kind of instruments we will treat in this article."
"(1) In order that the public instrument be held as authentic, and in accordance with the law, the following conditions are required:   *   *   *   (7) That the writing being made, it be read by the notary to the parties and the witnesses, and, the former agreeing to its tenor, they shall sign with their names and surnames; 'and if they should not know how to sign, either of the witnesses, or any other person who may know how to write, may sign for him,' the notary making mention at the end 'that the witness signed for the party who did not know how to write.'" Law 1, tit. 23, bk. 10, Novissima Recopilacion. Escriche, pp. 886, 888. The civil law in regard to the requirements of a power of attorney is essentially the same as that of the common law, and it would hardly be contended that under the common law a person without a properly executed power could make a valid conveyance of another person's land. Yet these documents might very properly have been admitted in evidence as ancient documents, tending to show color of title, if they were offered alone for that purpose, with an understanding that they were to be followed up with proofs that the grantees took possession thereunder, and maintained the same under claim of title, until ouster by the defendant; and this proposition would have to be sustained by the evidence, as it is an elementary rule in the action of ejectment that the party claiming the right to lands must recover, if at all, on the strength of his own title. The possession of the defendant gives him a right against every person who can not establish a title. This is a general rule, to which there is no exception, and has been established by a world of

authorities.    See Taylor, Eject., p. 72, and cases cited.
The plaintiff in error does not claim that the documents
offered in evidence by him were legal deeds, but invokes
for them the ruling of the supreme court of the United
States in the case of Stoddard v. Chambers, 2 How.
119.    In that case the deed was executed in 1804.    It
was attested by two witnesses, and purported to have
been acknowledged in the presence of a syndic.

The deed had been executed forty years at the date
of that decision, and from the time of its execution to
the time of the decision the grantees were asserting
their claim under it.    It was presented to the commis-
sioners in 1811, having been filed with the recorder of
land titles in the year 1808; and again it was brought
before the commissioners in 1835, having remained on
the file until that time.    Possession under the deed
was for a time held by Stoddard himself, and became
so notorious that an elevation on the land was called
"Stoddard's Mound."    It was held that such a deed,
under such a state of facts, was properly admitted in
evidence.    In this case there is no evidence that Tomas
Sena, the grantee, ever had possession of any part of the
land, or by any act of his ever asserted or pretended to
assert any claim of title to any part of it, unless it is
included in a general bequest to his heirs by his first wife,
which will was executed in 1835.    The will, however, was
only offered in evidence to show who the heirs of
Tomas Sena were, and not for the purpose of showing
that the land was included in his will, or thereby in-
tended to be conveyed to any person or persons.    The
documents were not recorded during the lifetime of
Tomas Sena, or during the lifetime of Miguel Sena y
Quintana, his son, who died in the year 1875, he being
the party who, it is claimed by the plaintiff, in the year
1866 or 1867 set up some claim of right to the property.
Whether this right was under or by virtue of the doc-
uments in question it does not appear.    So far as the

evidence shows, his claim to the property was that of his own. These documents, together with the will of his father, were found, after his death, in a box which had belonged to him. It does not appear in evidence that before that time any of the other heirs of Tomas Sena knew of their existence. His acts of ownership were to visit the land a few times, have it measured with a rope, to try and sell it; and put it in charge of Maj. Jose D. Sena, to take charge of it for him. Maj. Sena let different persons cultivate different parts of the lands. Some years some parts of the land were cultivated, some years others, and some years it remained idle. There are no buildings of any kind on the land, or other evidences of exclusive possession, except a wire fence around a small part of the land. The evidence does not show when that was constructed or by whom. There is no pretention that it was erected by Miguel Sena y Quintana. In fact the evidence shows the contrary, as Maj. Sena states in his testimony that he does not know who put the fence there, nor does he show that it was there while he had charge of the premises. Then, what was the character or effect of the acts of ownership exercised by Miguel Sena y Quintana to the locus in quo? It is admitted by the plaintiff in error that the documents in question are not deeds conveying fee simple title. Then, in order to give them any legal effect, it would have to be shown that Tomas Sena, the person mentioned in the documents as the grantee, or persons holding under him, had entered under them and occupied · the same by claim of right, until such possession ripened into title by prescription. There is no evidence that Tomas Sena ever had or claimed possession of the land, nor is there any evidence that Miguel Sena y Quintana entered or took possession as a tenant in common with the other heirs of Tomas Sena, deceased; but, so far as the evidence goes, his possession was adverse to

them. An ouster by a tenant in common by his cotenants does not differ in its nature from any other ouster. His entry was an ouster of them, and his possession was adverse to them, for his assumption of ownership was in himself, and clearly adverse to them, as well as the rest of the world; and, if any title inured to any person by virtue of his possession, it would be to him, his heirs, or persons holding under him, and not to the heirs of Tomas Sena, deceased.

And this brings us to consider a deed offered in evidence, executed by some forty persons on the fourth day of July, 1887, in which it is cited that QUITCLAIM deed: they are the heirs of Tomas Sena, deceased, and in consideration of one dollar and other good considerations quitclaim whatever right or title they may have inherited as heirs of Tomas Sena, deceased; it being thus set forth in the deed: "The property herein conveyed is the same property that the said parties of the first part obtained and inherited from Tomas Sena, deceased, who purchased the said real estate from Vicente Apodaca and Vicente Martin by deeds dated September 12, 1807, and July 30, 1821," etc. And this deed does not purport to convey any other title than that which they may have inherited as heirs of Tomas Sena, deceased, through the attempted conveyances before set out and considered. It is very clear that those documents did not convey to Tomas Sena any title, and therefore his heirs, whoever they may have been, could not convey a title through inheritance from the said Tomas Sena as derived by him through those documents. The court was therefore right in excluding this deed as evidence from the jury.

There are errors assigned upon the rulings of the court in excluding certain testimony from the jury, which was claimed tended to show who the heirs of

Tomas Sena were. This testimony could only become EXCLUSION of evidence immaterial. material after they had established a title in Tomas Sena, which, according to the view we have taken of the case, the plaintiffs failed to do. Therefore the testimony in that regard was immaterial, and errors, if any were omitted, in relation thereto, would be regarded immaterial, and can not have any effect here.

It is also claimed that the court erred in directing a verdict for defendant. This was practically settled EVIDENCE: verdict. in sustaining the ruling of the court below in excluding from the jury as evidence the title papers offered by the plaintiff in error. Those papers being excluded there was no evidence to support a verdict, and the court very properly instructed the jury to return a verdict for the defendant, for the reason that the law presumes a person in possession of real estate has a valid title thereto, and this presumption can only be overcome by proving the title out of such party. Finding no substantial error, the judgment will be affirmed.

O'BRIEN, C. J., and McFIE, FREEMAN, and SEEDS, JJ., concur.